IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-MJ-01016-RN

**United States of America,**

v.

**Alio Naallah,**

              Defendant.

**Judgment**

In this criminal action, the Government charged Defendant Alio Naallah with violating North Carolina General Statute § 20–138.1, driving while impaired ("DWI"), as assimilated by 18 U.S.C. § 13. The undersigned magistrate judge conducted a bench trial at the September 21, 2015 session of this court. After reviewing the entire record, considering all of the testimony, reading each exhibit, and assessing the credibility of the witnesses, the court enters the following findings of fact and conclusions of law.[1] For the reasons stated, the court adjudges Naallah guilty of DWI based on the admissible evidence of record.

**I.    Factual Background**

This case arises from a vehicle stop on the Fort Bragg Military Reservation. On January 7, 2015, the Government issued a criminal information charging Naallah with the instant offense. D.E. 1.

The factual background elicited from the testimony at trial reveals the following facts: On September 27, 2014, at approximately 3:00 a.m., Specialist Jose Guerra stopped Naallah's

---

[1] To the extent any finding of fact should be designated as a conclusion of law, it should be considered a conclusion of law. Similarly, to the extent any conclusion of law should be designated a finding of fact, it should be considered a finding of fact.

vehicle at the Randolph Gate Guard Stand for a random vehicle inspection. Tr. at 6:3–7, 7:7–11. Guerra testified that Naallah's car approached the gate fast. *Id.* at 96–16. Guerra stated that Naallah was chewing gum "like crazy," was jittery, and he climbed over the seat to open the car door. *Id.* at 10:18–20, 12:16–18, 16:20–25. Based on these observations, Guerra believed Naallah was under the influence of an intoxicating substance and called the Military Police ("MPs"). *Id.* at 16:12–15, 16:20–22.

Sergeant Ryan Beitler, a traffic crash investigator and MP, also testified. *Id.* at 30:23–31:1. As part of his job and training, Beitler testified that he investigates DWI matters. *Id.* at 31:9–11. Beitler stated that he observed that Naallah had bloodshot, watery eyes and the smell of alcohol was emanating from his person. *Id.* at 33:18–22. Beitler also stated that the smell of alcohol became stronger when Naallah spoke. *Id.* at 34:2–10. Naallah related that he had been at a local bar and that he had consumed a couple of drinks. *Id.* at 34:11–22. Beitler asked Naallah if he would consent to standard field sobriety tests, and Naallah did consent. *Id.* at 35:12–25. Beitler administered the heel-toe test and the one-leg stand. *Id.* at 39:2–4, 43:1–2. He testified that Naallah could not keep his balance and had difficulty following the instructions. *Id.* at 41:5–7, 41:18–42:18, 45:8–16, 45:24–46:1. Naallah also consented to the administration of a preliminary breath test ("PBT"). *Id.* at 46:9–13. A PBT is used to detect the presence of alcohol in an individual's breath. Naallah's breath tested positive for the presence of alcohol.[2] *Id.* at 47:16–19. Beitler agreed that administering the field sobriety tests and the PBT may have taken five minutes. *Id.* at 70:8–15.

---

[2] The results of a PBT are not admissible as evidence but can establish probable cause. *United States v. Van Hazel*, 468 F. Supp. 2d. 792, 797–98 (E.D.N.C. 2006).

Based on the PBT and Naallah's failure to successfully perform the field sobriety tests, Beitler arrested Naallah for suspicion of DWI. *Id.* at 47:22–24. Naallah was transported to the Fort Bragg Law Enforcement Center where he was read his rights. *Id.* at 47:25–48:8. Beitler stated that Naallah attempted to give a breath sample for the Intoximeter[3] four (4) times but was unsuccessful. *Id.* at 49:14–50:2. There was no apparent reason why Naallah would not be able to give a sufficient breath sample. *Id.* at 50:12–17. Beitler stated that from his training and experience, an individual in good health is able to provide a breath sample without difficulty. *Id.* at 50:18–23.

Following Naallah's fourth failed attempt with the intoximeter, MPs treated the matter as a refusal to submit to the testing. *Id.* at 51:4–11. Based on the ease of giving a breath sample coupled with Naallah's apparent good health, Beitler opined that Naallah could have given a sufficient breath sample. *Id.* at 53:2–8. He thus concluded that Naallah's failure to submit a sufficient sample to the intoximeter constituted a willful refusal. *Id.* at 52:22–53:1. Beitler further opined that Naallah had consumed a sufficient amount of alcohol to impair his faculties. *Id.* at 53:9–19.

Corporal Michael Reyes, a military police officer, also testified. *Id.* at 98:16–21. He was responsible for traffic accidents and DWIs on Fort Bragg. *Id.* at 90:2–7. Reyes is trained in chemical analysis and field sobriety testing, as well as DWI enforcement and traffic accident matters. *Id.* at 90:8–15. On September 27, 2014, Reyes was a traffic accident investigator who responded to the scene where Naallah's car was stopped. *Id.* at 91:2–7. Reyes testified that Naallah was given Form 4081, which lists the rights of persons requested to submit to chemical

---

[3] The Intoximeter is an instrument approved by the National Highway Traffic Safety Administration ("NHTSA") as conforming to the model specifications for evidential breath alcohol measurement devices. *United States v. Ahlstrom*, 530 F. App'x 232, 239 (4th Cir. 2013).

analysis. *Id.* at 91:15–22. This form advised Naallah of the consequences of refusing any of the testing or if the tests result in a sample over the legal limit. *Id.* at 92:13–17, 93:1–10. Reyes read this form to Naallah, including the relevant portion that stated a refusal to submit to testing is admissible at trial. *Id.* at 91:23–92:6, 93:11–12. Naallah signed the form. *Id.* at 93:13–16.

Reyes administered the Intoximeter to Naallah and explained to him how to give a breath sample. *Id.* at 94:11–18. Reyes stated that Naallah was given four attempts but that he was not blowing hard enough to provide a sufficient sample. *Id.* at 94:19–24, 95:7–16. Reyes opined that if he desired, Naallah would have been able to give a sufficient breath sample. *Id.* at 95:17–20, 96:9–12. Thus, Reyes opined that Naallah willfully refused to give a breath sample. *Id.* at 95:21–23. 96:5–8. Reyes based this opinion on his previous law enforcement experience and his observations of Naallah. *Id.* at 99:5–10.

## II. Analysis

### A. Legal Standard

Naallah is charged with violating North Carolina General Statute § 20-138.1 ("DWI"), which provides in relevant part that "[a] person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State … [w]hile under the influence of an impairing substance." N.C. Gen. Stat. § 20-138.1(a)(1). Although a violation of § 20-138.1 is a state law crime, Naallah is charged with a federal crime because of the Assimilative Crimes Act, 18 U.S.C. § 13. Under the Assimilative Crimes Act, those who commit criminal acts on federal reservations are subject to prosecution under state law if there is no applicable federal law specifically prohibiting the criminal conduct. *United States v. Minger*, 976 F.2d 185, 187 (4th Cir. 1992). When a state law is assimilated under the Assimilative Crimes Act, federal courts look to state law for the elements of the crime. *Id.*

4

However, federal law of evidence, not state law of evidence, governs the proceeding. *United States v. Van Hazel*, 468 F. Supp. 2d 792, 798 (E.D.N.C. 2006).

To prove Naallah guilty of DWI, the government must establish the following three elements beyond a reasonable doubt: (1) that Naallah was driving a vehicle; (2) that he was driving that vehicle upon a street, highway, or public vehicular area on Fort Bragg Military Reservation, an area in North Carolina within the special maritime and territorial jurisdiction of the United States; and (3) that at the time Naallah was driving the vehicle, he was under the influence of an impairing substance. *See* N.C. Gen. Stat. § 20–138(a)(1); *see also* 18 U.S.C. § 13(a); N.C.P.I.-Crim. 270.20. Here, only the third element, that Naallah was under the influence of an impairing substance, is disputed. Tr. at 7:7–13 (testimony regarding the defendant driving a motor vehicle on the night in question), 8:19–9:4 (the court takes judicial notice that the Fort Bragg military reservation is located within the special maritime and territorial jurisdiction of the United States).

An impairing substance includes alcohol. N.C. Gen. Stat. § 20–4.01(14a). "A person is under the influence of an impairing substance when he has taken (or consumed) a sufficient quantity of that impairing substance to cause him to lose the normal control of his bodily or mental faculties, or both, to such an extent that there is an appreciable impairment of either or both of these faculties." N.C.P.I.-Crim. 270.20; *see also* N.C. Gen. Stat. § 20–4.01(48b) (defining "under the influence of an impairing substance" as "[t]he state of a person having his physical or mental faculties, or both, appreciably impaired by an impairing substance").

### B. The Government Proved Beyond A Reasonable Doubt That Defendant Violated N.C. Gen. Stat. § 20–138(a)(1)

At the bench trial, the Government presented testimony concerning Naallah's refusal to submit to the Intoximeter test at the police station. Both federal and North Carolina law provide for implied consent to testing for impairment while driving, revocation of the driving privilege for refusal to submit to testing, and admission of such refusal into evidence at trial on the impaired driving charge. *See* 18 U.S.C. § 3118; N.C. Gen. Stat. § 20–16.2(a). As noted *supra*, the federal rules of evidence govern this proceeding. Accordingly, the Court will deem evidence of Naallah's refusal to submit to a breathalyzer to be governed by the relevant federal statute, 18 U.S.C. § 3118(b), rather than the corresponding North Carolina statute, N.C. Gen. Stat. § 20-16.2(a). The federal statute applies to all persons operating motor vehicles in the special maritime and territorial jurisdiction of the United States who are arrested for an impaired driving offense. The statute explicitly states that "refusal [to submit to a breath test] may be admitted into evidence in any case arising from such person's driving while under the influence of ... alcohol." *Id.* § 3118(b). Military reservations, such as Fort Bragg, are within the special maritime and territorial jurisdiction of the United States, *see* 18 U.S.C. § 7(3) (defining "special maritime and territorial jurisdiction of the United States"), and Naallah was arrested for an impaired driving offense. Therefore, the court may consider Naallah's refusal to submit to the Intoximeter test as substantive evidence that he was driving while impaired. This evidence, together with the other evidence as summarized below, establishes beyond a reasonable doubt that Naallah drove while under the influence of alcohol, an impairing substance.

The Government presented evidence that Naallah had watery, bloodshot eyes and had a smell of alcohol emanating from his person. Naallah conceded he had been at a local bar that evening. Additionally, a PBT test administered was positive for the presence of alcohol on

Naallah's breath. He consented to perform field sobriety tests. Naallah was unsteady on his feet and could not follow all of the instructions given during the field sobriety tests. At the police station, Naallah failed to give a sufficient sample of breath to the Intoximeter. Testimony established that giving a sufficient breath sample is not difficult and there was no obvious reason for Naallah's inability to perform the test. Accordingly, MPs concluded that this failure amounted to a willful refusal to be tested by the Intoximeter. At trial, Naallah presented no evidence suggesting why he would be unable to offer a sufficient breath sample for the Intoximeter.

Under 18 U.S.C. § 3118(b), "refusal [to submit to a breath test] may be admitted into evidence in any case arising from such person's driving while under the influence of … alcohol." *United States v. Van Hazel*, 468 F. Supp. 2d 792, 798 (E.D.N.C. 2006). Naallah's refusal to take the breathalyzer test can properly be considered as substantive evidence that he was driving while impaired. *Id.*

The admissible trial evidence establishes beyond a reasonable doubt that on September 27, 2014, Naallah was driving a vehicle while under the influence of alcohol in violation of N.C. Gen. Stat. § 20–138.1. Evidence showing that Naallah was under the influence of alcohol includes the following: (1) his car approached the inspection gate faster than cars usually approach the inspection gate, (2) he had bloodshot, watery eyes, (3) the strong odor of alcohol on Naallah's person, (4) the smell of alcohol became stronger when Naallah spoke, (5) Naallah's statement that he had consumed alcohol that evening, (6) his inability to maintain his balance during filed sobriety testing, (7) his inability to follow the instructions for the field sobriety tests, and (8) his refusal to take the breathalyzer test.

7

Case 5:15-mj-01016-RN   Document 18   Filed 03/31/16   Page 7 of 8

North Carolina courts have upheld impaired driving convictions under similar circumstances. *See, e.g.*, *State v. Rhodes*, No. COA 12–1143, 2013 N.C. App. LEXIS 556, at *7– 8, 2013 WL 2407161 (N.C. Ct. App. June 4, 2013) (unpublished) (finding no error in the defendant's conviction of DWI where the defendant smelled of alcohol, admitted to drinking alcohol the night before, had bloodshot eyes and slurred speech, was unsteady on her feet, could not follow field sobriety test instructions, and refused to take an intoxilyzer test); *State v. Gregory*, 154 N.C. App. 718, 721, 572 S.E.2d 838, 840 (2002) (upholding DWI conviction where the defendant was speeding, abruptly changed lanes without signaling, slammed on his brakes, smelled of alcohol, staggered while walking, admitted to drinking alcohol prior to driving, had slurred speech, and refused to submit to a breathalyzer test). For all these reasons, the undersigned concludes that the government met its burden of proving beyond a reasonable doubt that Naallah violated N.C. Gen. Stat. § 20–138.1.

### III. Conclusion

As discussed above, the court finds that the Government has proven each element of the offense charged beyond a reasonable doubt. Therefore, Naallah is adjudged guilty of the sole count of the Criminal Information.

Nallah shall appear at the United States District Court at 301 Green Street in Fayetteville, North Carolina on June 1, 2016, at 8:00 a.m. for his sentencing hearing.

Dated: March 31, 2016

_____
Robert T. Numbers, II
United States Magistrate Judge

8

Case 5:15-mj-01016-RN   Document 18   Filed 03/31/16   Page 8 of 8